**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| RALPH A. SHOBERG, JOHN B. } | |
| JOHNSON, JAMES R. STEPHENS } | |
| B. AMILEE WENDT, ANN B. } | |
| VANDERHOEF, RICHARD COOK } | |
| and LOUIS SMITH, individually and } | |
| derivatively on behalf of } | |
| CLEARMEDIAONE, INC., and } | |
| SECURITYCOMM GROUP, INC., } | |
| and their shareholders as a class, } | |
| *Plaintiffs* } | |
| v. } | CIVIL ACTION NO. H-05-2122 |
| } | |
| CLEARMEDIAONE, INC. } | |
| ROBERT F. STRANGE JR., } | |
| ROBERT J. VIGUET JR., and } | |
| THOMPSON & KNIGHT, LLP, } | |
| *Defendants* } | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendants ClearMediaOne incorporated and Robert F. Strange's motion to dismiss (Instrument No. 36). In an earlier memorandum opinion and order the court granted-in-part and denied-in-part Defendants Robert J. Viguet and Thompson and Knight LLP's motion to dismiss (Instrument No. 38). For the following reasons, the court ORDERS that Defendants ClearMediaOne incorporated and Robert F. Strange's motion is DENIED.

I. Facts and Procedural History

Plaintiffs, shareholders, creditors, and former employees of Defendant ClearMediaOne incorporated ("CMO") are asserting a variety of claims arising out of two intertwined companies, CMO and SecurityComm Group Inc. ("SCG"). Plaintiffs' claims against Robert F. Strange ("Strange") can be grouped into three categories: claims brought individually for violation of state

and federal securities laws and for fraud; claims brought derivatively on behalf of CMO for breach of fiduciary duty; and, claims brought individually against Strange, as the alter ego of CMO, for breach of employment agreements and promissory notes.

This case was originally brought in Texas State court in 2002. In May 2005, additional Plaintiffs intervened adding new Defendants, and the case was removed to this court. Plaintiffs were ordered to file a consolidated complaint, which they did in December. *See* Plaintiffs' Consolidated Complaint ("PCC") (Instrument No 27). Defendants Thompson & Knight LLP and Robert J. Viguet then filed their motion to dismiss. Strange and CMO's motion to dismiss was filed on 31 July 2006. Plaintiffs responded on 18 August 2006. Discovery is currently stayed pending the resolution of Defendants' motion.[1]

II. Factual Allegations in Plaintiffs' Consolidated Complaint

Plaintiffs' Consolidated Complaint ("PCC") alleges that Strange masterminded a scheme to turn a company with no assets, no customers, and very little funding into a multi-million dollar public company. Strange's scheme entailed forming a corporation, issuing millions of shares in the corporation to himself and his partners at one penny per share, offering more shares in the company to outside investors at fifty cents per share, using the capital raised and yet more shares to purchase other companies, and finally merging the conglomerate into a public shell company. The PCC alleges that Strange was aided in this scheme by his partners in eComm Ventures L.P.: Robert J. Viguet, Chuck Gardner, and Wesley Jaynes.

---

[1]
Title 15 U.S.C. § 78u-4(b)(3)(B) provides

(B) Stay of discovery. In any private action arising under this title [15 USCS §§ 78a et seq.], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

CMO was formed in 2000 to carry out Strange's plan. CMO shares were issued to Strange, Gardner, and Jaynes individually, and to eComm Ventures L.P. at one penny per share. CMO's only operating division, Media Home Systems, was staffed with the former employees of a company known as AES, which immediately sued for theft of proprietary business information. During this period CMO operated on a shoestring and was unable to fund payroll taxes.

Against this backdrop, shares were offered to the public at fifty cents per share. In August 2000, Strange sent an offering memorandum to potential investors. The offering memorandum contained multiple misrepresentations. Among the misrepresentations in the memorandum were (1) that CMO had existing clients and (2) that a second operating division named ClearMediaSystems existed. A pro forma invoice attached to the memorandum misrepresented Media Home System's performance and extrapolated projected annual revenues of 5.75 million dollars. On the basis of these misrepresentations, Plaintiff Louis Smith invested in CMO.

Another offering memorandum was circulated in March 2001. The memorandum made the same misrepresentations as the 2000 memorandum, but CMO's projected revenues were represented as sixteen million dollars. A personal letter from Strange followed the mailing of the memorandum. The letter stated that a single investor had decided to fund CMO's entire debt offering and that therefore potential investors had to act before May 23rd to be included. On the basis of these misrepresentations, Plaintiffs Richard Cook and Ann Vanderhoef invested in CMO.

Plaintiffs complaint recounts that Strange then set out to acquire other companies. He was initially successful. By 2003, however, mismanagement and theft had made CMO insolvent. Needing a new influx of capital, Strange, with the help of Wesley Jaynes, approached Louis Smith. He told Smith that a new Nevada company named SecurityComm would be formed as a name change for CMO, that the CMO shareholders would participate in a reverse split, and that he expected the company to be trading within several months on the American Stock Exchange at four

3

or five dollars per share. Strange compounded these misrepresentations by including a CMO prospectus showing CMO's historical revenue as 6.5 million dollars in the previous year. The same prospectus also misrepresented that CMO had more the 3.5 million dollars in liquid assets and that shareholder liquidity exceeded four million dollars. On the basis of these misrepresentations, Louis Smith invested in SCG.

Around this time, the eComm Ventures partners held a teleconference to discuss Strange's plan. The partners discussed forming a new corporation that would take over CMO's existing business opportunities and leave behind its liabilities, including its shareholders and creditors. Viguet, the lawyer, assured the other partners that it was appropriate to approach Smith for further investment and that there would be "no successor issues."

In July 2003, SCG was formed as a Texas corporation. While some of the investors in CMO were carried over – eComm Ventures was given more than a third of SCG's shares – others were excluded from the new company. None of the Plaintiffs were told about the new company or its purpose. As planned, SCG took over CMO's business, leaving an empty shell for its creditors and shareholders.

With a new platform for his scheme, Strange set out to acquire other companies. In late 2003, he became interested in a company named Westex. To induce the Westex principals to part with their ownership interest in exchange for SCG shares, Strange circulated a private placement memorandum ("PPM") prepared by Viguet and Thompson & Knight LLP. Rather than containing SCG's financial information, however, the PPM contains the financial information of a company named APT.

The Westex deal closed in December 2003, but was short-lived. In February 2004, Westex principals and stakeholders filed suit against SCG. In April, they repossessed their assets. SCG, represented by Thompson & Knight LLP, responded by suing for fraud and conversion. Eventually

a settlement was reached whereby SCG released all its claims in exchange for the payment of its legal fees and a consulting agreement for Strange. The total value of the settlement was $180,000.

III. Law

A. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). A court dismisses a complaint under Rule 12(b)(6) only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46(1957). "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2nd ed. 1990). A plaintiff must, however, assert more than general legal conclusions to avoid dismissal. *Jefferson v. Lead Industries Assoc., Inc.,* 106 F.3d 1245, 1250 (5th Cir. 1997). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery. . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quoting 3 WRIGHT & MILLER FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 1216 at 156-159). Where a complaint asserts merely conclusory allegations, these conclusory allegations and unwarranted deductions of fact are not admitted as true. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992). Second, where a complaint shows on its face that it is barred by an affirmative defense, a court may dismiss the action for failing to state a claim. *Kaiser Aluminum*, 677 F.2d at 1050.

In considering a Rule 12(b)(6) motion to dismiss a district court may review the pleadings on file, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000), and matters of public record. *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995). "Pleadings on file" includes "[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins*, 224 F.3d at 498-99.

B. Federal Rule of Civil Procedure 9(b) and the Private Securites Litigation Reform Act of 1995

In the Fifth Circuit, both Federal and State securities fraud claims are subject to the pleading requirements of Federal Rule of Civil Procedure 9(b). *Williams v. WMX Technologies, Inc.*, 112 F3d 175, 177 (5th Cir.1997). Additionally, Plaintiffs' Federal claims are subject to the pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b). Federal Rule of Civil Procedure 9(b) requires a Plaintiff stating a fraud claim to specify "the who, what, when, where and how." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997). Under the PSLRA, Plaintiff must also plead facts giving rise to a strong inference that the defendant acted with scienter. *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 407 (5th Cir. 2001). A complaint which fails to meet any of these requirements must be dismissed.15 U.S.C. § 78u-4(b)(3)(A).

IV. Application of Law to the Facts.

Defendants raise five issues in their motion: (1) whether Plaintiffs have standing to pursue their securities fraud claims; (2) whether Plaintiffs have stated facts giving rise to a strong inference of scienter; (3) whether Plaintiffs have properly alleged reliance; (4) whether conflicts of interest disqualify Plaintiffs from acting derivatively on behalf of CMO and SCG; and (5) whether Plaintiffs have properly stated a claim for conspiracy.

Plaintiffs Cook, Vanderhoef and Smith have standing to pursue their securities fraud claims.

6

Standing under Section 10b is limited to purchasers or sellers of securities who have been injured by deception or fraud in connection with their purchase or sale. *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 226 (5th Cir. 1994) (*citing Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 464 (2d Cir. 1952); *accord Blue Chip Stamps v. manor Drug Stores*, 421 U.S. 723, 734, 755 (1975)). The PCC alleges that Plaintiffs Cook, Vanderhoef and Smith purchased securities based on Defendant's misrepresentations, and that Smith purchased securities in connection with the fraudulent incorporation of SCG. The PCC does not, however, make similar allegations as to the remaining Plaintiffs. Only Cook, Vanderhoef, and Smith therefore have standing to maintain the securities fraud claims in the complaint.

Plaintiffs complaint alleges facts supporting a strong inference of scienter. For the purposes of securities fraud, scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Nathenson*, 267 F.3d at 408 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S. Ct. 1375, 1381 n.12, 47 L. Ed. 2d 668 (1976)). Here, Plaintiffs' allegations overwhelmingly support an inference that Strange acted with scienter. For example, Plaintiffs allege that Strange is the founder and chief executive officer of CMO and that CMO is a closely held corporation. It is fair to infer from these facts that Strange was aware of CMO's operations and intended to deceive investors when he misrepresented CMO's current operations and future prospects in the 2000 and 2001 memoranda. It is also fair to infer that, as CMO's chief executive officer, Strange was aware that no single investor had undertaken all of CMO's funding in 2001. Plaintiffs allege that shortly before he contacted Smith for further investment Strange and CMO were evicted from their corporate offices. It is fair to infer from this allegation that Strange knew he was misrepresenting CMO's financial condition when he told Louis Smith it was a successful company.

None of Strange and CMO's other arguments are convincing. In its prior order, the court

7

addressed whether Plaintiffs' derivative and conspiracy claims are defective. *See* memorandum opinion and order (Instrument No. 38). The court found that Plaintiffs can adequately represent the interests of CMO and SCG.. It also found that Plaintiffs have properly stated a claim for conspiracy. Finally, as to pleading reliance, Plaintiffs have made the required allegations. *See* PCC ¶¶ 59, 73, 123, 124, 152.

V. Conclusion

For the aforementioned reasons, the court ORDERS that Defendants Strange and ClearMediaOne's motion (Instrument No. 36) is DENIED.

This case is REFERRED to United States Magistrate Judge Frances Stacy for a scheduling conference pursuant to Federal Rule of Civil Procedure 16.

SIGNED at Houston, Texas, this 18th day of October, 2006.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE